IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DENTAVIA KHIRY MCNAIR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 118-068 |
| | ) | (Formerly CR 113-010) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner Dentavia Khiry McNair filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  The Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.    **BACKGROUND**

A.    **Indictment**

On January 11, 2013, the grand jury in the Southern District of Georgia charged Petitioner and his codefendants in a one-hundred-forty-six-count indictment.  United States v. McNair, CR 113-010, doc. no. 3 (S.D. Ga. Jan. 11, 2013) (hereinafter "CR 113-010"). Petitioner was charged with one count of conspiring to defraud the government with respect to claims involving fraudulent tax returns, thirteen counts of theft of public money, seven counts of misuse of health identifiers, and seven counts of aggravated identity theft.  Id.  The conspiracy, the theft of public money, and misuse of health identifier charges carried a

maximum term of ten years imprisonment for each count, and the aggravated identity theft charges carried a sentence of two years of imprisonment consecutive to any sentence for the predicate felony offense.  CR 113-010, doc. no. 4.  The Court appointed Danny L. Durham to represent Petitioner as trial counsel.  Id., doc. no. 155.

### B.    Agreement to Plead Guilty

On May 21, 2013, Petitioner pleaded guilty to one count of conspiracy, two counts of misuse of health identifiers, and one count of aggravated identity theft.  Id., doc. nos. 271-273.  In exchange for the guilty plea, the government agreed to (1) dismiss the remaining counts of the indictment; (2) not object to a recommendation from the probation office for a two-point acceptance of responsibility reduction; (3) move for an additional one-point reduction under the Sentencing Guidelines if Petitioner qualified for the two-point decrease for acceptance of responsibility, providing Petitioner had not engaged in criminal conduct subsequent to arrest or initial appearance in this matter; and (4) consider filing a motion, based on any "substantial assistance" provided by Petitioner, for downward departure under U.S.S.G. § 5K1.1 or requesting a reduction of Petitioner's sentence under Fed. R. Crim. P. 35.  Id., doc. no. 273, pp. 1-3.

Petitioner's plea agreement contained the following factual basis for his guilty plea:

Between 2009 and 2011, . . . Dentavia McNair . . . did receive United States Currency from refunds from the United States Treasury based on tax returns that contained one or more false statements.  Between 2009 and 2011, the Defendants filed 90 fraudulent, false, or fictitious tax returns totaling over $500,000 in false, fictitious, or fraudulent claims. . . .  [B]eginning on or about January 1, 2009 and continuing until the return of this indictment, in the Southern District of Georgia, the defendant Dentavia McNair did combine, conspire, confederate, and agreed together with others known and unknown, to knowingly and intentionally defraud the United State[s] Department of Treasury by obtaining and attempting to obtain payment of false claims . . . .  [O]n [April 28, 2011, and July 7, 2011], in Richmond County, in the Southern

District of Georgia, and elsewhere, the defendant, Dentavia McNair knowingly and for a reason other than permitted by Title 42, United States Code, Chapter 7, Subchapter XI, Part C, used and caused to be used, individually identifiable health information for personal gain. Specifically, the defendant(s) did obtain individually identifiable health information relating to individuals, that is, patients' names, dates of birth, and Social Security numbers, which had been collected by a health care providers [sic], with the intent to use said information for personal gain for themselves and other co-defendants, in that the health information was used to file fraudulent tax returns, which resulted in tax refunds to which the defendant(s) were not entitled.  . . .  [O]n or about [April 28, 2011], in Richmond County, in the Southern District of Georgia, Dentavia McNair, aided and abetted by others, did knowingly transfer, possess and use, without lawful authority, means of identification of other persons, that is names and social security numbers, during and in relation to Theft of Public Money, a federal violation of Federal law pursuant to 18 U.S.C. 641, as charged in this indictment.

Id. at 5-8.

The plea agreement also contained an appeal and collateral attack waiver, as follows:

To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court.

Id. at 4-5.

Petitioner attested he read the plea agreement, understood what it said and meant, and it accurately set forth the terms and conditions of the agreement as negotiated by his attorney on his behalf and with his permission.  Id. at 14.

### C.   Change of Plea Hearing

During the change of plea hearing, Chief United States District Judge J. Randal Hall established Petitioner's competence to enter a guilty plea if he so desired.  Id., doc. no. 413,

p. 30.  Petitioner testified under oath he had enough time to discuss his case with Mr. Durham and was satisfied with counsel's assistance.  Id. at 10-11.  Judge Hall reviewed the charges to which Petitioner was pleading guilty and the potential prison terms.  Id. at 6-9, 15-16.

Judge Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights.  Among the list of rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent.  Id. at 11-12.  In addition, Judge Hall reviewed the appeal and collateral attack waivers and their limited exceptions and confirmed that, other than the promises the government made in the plea agreement, no one had made Petitioner any promises in order to get him to plead guilty.  Id. at 14-15.

Next, Judge Hall heard a factual basis for the guilty plea from IRS Agent Roger Garland.  Id. at 21-16. Agent Garland testified the investigation began when Richmond County Sheriff's Office Investigator Mike Lanham received a telephone call from Georgia Bank and Trust ("GB&T") officials informing him a bank account in Petitioner's name was receiving "unrelated third-party tax refunds," which was unusual.  Id. at 21.  GB&T could not find a connection between the named recipients and Petitioner.  Id.  Inv. Lanham contacted FBI Special Agent Paul Kubala and Agent Garland with the information, and the agents contacted co-defendant Cheryl Willingham, who was one of the named recipients.  Id. at 21-22.  Ms. Willingham informed the agents Petitioner was living with his mother, Janice Smalley, who stole identifying information from patients at MCG Hospital, her place of employment.  Id. at 22.  Cheryl Willingham is co-defendant Angela Willingham's daughter,

4

and she explained her mother is the sister of co-defendant Janice Smalley, Petitioner's mother. Id. The agents obtained tax returns for the refunds entered into Petitioner's account and discovered the same scheme was used for all of them; namely, false W-2Gs from the Georgia Lottery Corporation with overstated federal withholdings, causing a refund. Id. at 23. The agents contacted the Georgia Lottery Corporation with a list of names and Social Security numbers involved, and Georgia Lottery confirmed the W-2Gs were not legitimate. Id. at 23-24. Thirteen fraudulent refunds were deposited in Petitioner's GB&T and SRP Federal Credit Union ("SRP") bank accounts. Id. at 24. All refunds deposited in the GB&T account and one deposited in the SRP account were from fraudulent tax returns in the names of MCG patients. Id. Petitioner received approximately $37,000 in his GB&T account and $20,000 in his SRP account from the tax returns. Id. Some of the returns were divided, causing portions of refunds to be deposited into accounts belonging to co-defendants. Id. at 24-25.

Petitioner told Judge Hall he had no disagreement with anything Agent Garland recounted but then stated the "only thing [he did] was withdraw money from legal funds." Id. at 26-27. Upon further questioning, however, Petitioner admitted he knew what his codefendants were doing was illegal, understood they stole money from the government by obtaining fraudulent refunds, used the personal information of others for his own personal gain, and did so in connection with theft of public funds. Id. at 27-29. Petitioner testified he was guilty of, and wanted to plead guilty to, Counts One, Ninety-three, Ninety-six, and 122 of the indictment, which charged him with one count of conspiracy, two counts of misuse of health identifiers, and one count of aggravated identity theft. Id. at 22. Judge Hall accepted the guilty plea, finding a sound factual basis for it, and found Petitioner's decision to plead

guilty was voluntary, knowing, and not the result of force, pressure, threats, or promises.  Id. at 30-31.

D.      **Presentence Investigation Report (PSI)**

The PSI described Petitioner's conduct while awaiting sentencing as it related to a potential adjustment for acceptance of responsibility.  PSI ¶¶ 15-21.  On April 20, 2013, Petitioner was incarcerated at Lincoln County Jail ("LCJ"), and LCJ Corporal Reid filed a disciplinary report against Petitioner for inappropriate behavior and threats against staff.  PSI ¶ 15.  Specifically, Corporal Reid and other deputies escorted Petitioner to a holding cell after he was observed standing in the corner of a common room masturbating and looking into the control booth.  Id.  Approximately twenty minutes later, officers escorted Petitioner from the holding cell to an isolation cell after he was observed removing his clothing and masturbating in front of another inmate and LCJ Deputy Gartrell.  Id.  Once in the isolation cell, Petitioner threatened to throw his urine at Corporal Reid.  Id.

On April 22, 2013, Petitioner began to throw items out of the access portal in the door of his cell and attempted to prevent deputies from closing the portal.  PSI ¶ 16.  Petitioner placed his shirt over the camera inside his cell and began to curse and act aggressively toward the deputies.  Id.  On May 29, 2013, a nurse complained that, after she directed Petitioner to swallow medication, he told her twice "'I have something for you to swallow,'" while gesturing with his hands inside his pants.  PSI ¶ 17.

On June 17, 2013, Petitioner was involved in an altercation with another inmate, which occurred after the inmate told Petitioner he did not want to see Petitioner "play with himself" in the common room.  PSI ¶ 18.  On July 2, 2013, a deputy observed Petitioner sitting on his bed masturbating during an inmate count.  PSI ¶ 19.  Later that day, Petitioner

was transferred to McDuffie County Jail after he told a female staff member he would find out where she lives after he was released and "rape the fucking shit out of her."  PSI ¶ 20. The PSI states these actions show Petitioner failed to withdraw from criminal activities and, thus, does not appear to have accepted responsibility for his actions.  PSI ¶ 21.

The PSI set Petitioner's base offense level for Count One at six, pursuant to U.S.S.G. § 2B1.1(a)(2), and Petitioner's base offense level for Counts Ninety-three and Ninety-six at six, pursuant to U.S.S.G. § 2B1.1(a)(2).  PSI ¶¶ 24, 36.  Petitioner's offense level for Count One increased to twenty after enhancements for: (1) a loss amount of $83,670; (2) the involvement of fourteen victims; (3) the use of sophisticated means; namely, using multiple bank accounts to deposit fraudulent income tax returns, monitoring the returns electronically, and withdrawing the proceeds immediately upon deposit; and (4) actual or constructive knowledge the victim was vulnerable, as she was a hospital patient, suffered from dementia, and was confined to a nursing home.  PSI ¶¶ 25-28.  Petitioner's offense level for Counts Ninety-three and Ninety-six increased to sixteen after enhancements for:  (1) an intended loss of $39,981; and (2) actual or constructive knowledge the victim was vulnerable, as she was a hospital patient, suffered from dementia, and was confined to a nursing home.  PSI ¶¶ 34-35. Because the adjusted offense level from Count One resulted in the higher offense level, Petitioner's combined adjusted offense level was twenty.  PSI ¶ 38.  For the reasons set forth above, the PSI did not recommend an acceptance of responsibility reduction, resulting in a total offense level of twenty.  PSI ¶¶ 40-41.

Petitioner received a criminal history score of thirteen pursuant to U.S.S.G. § 4A1.1 based on:  (1) a 2006 conviction for theft by taking of a motor vehicle; (2) a 2007 conviction for obstruction of a law enforcement officer; (3) a 2009 conviction for theft by taking; (4)

2012 convictions for theft by receiving stolen property, fleeing or attempting to elude a police officer, and interference with government property; and (5) committing the instant offense while under a criminal justice sentence. PSI ¶¶ 43-49. Accordingly, Petitioner's criminal history score of thirteen established a criminal history category of VI. PSI ¶ 49. Based on a total offense level of twenty and a criminal history category of VI, Petitioner's guideline imprisonment range was 70 to 87 months, and the guideline sentence for Count 122 was twenty-four months, the minimum term of imprisonment required by the statute, to be served consecutively. PSI ¶ 67.

### E.    Sentencing

Through counsel, Petitioner objected to the PSI. See PSI Addendum. Petitioner admitted to the conduct alleged in paragraphs fifteen, sixteen, seventeen, and nineteen of the PSI, which included three instances of masturbation, threatening to throw urine on a prison official, twice telling a prison nurse "I have something for you to swallow" while gesturing with his hands inside his pants, and cursing at and acting aggressively toward prison officials. PSI ¶¶ 15, 16, 17, 19; PSI Addendum. However, Petitioner denied the altercation during which another inmate told Petitioner he did not want to see Petitioner "play with himself" in the common room and telling a female staff member he would find out where she lives after he was released and "rape the fucking shit out of her." PSI ¶¶ 18, 20; PSI Addendum. Petitioner apologized for some of his actions in the objections and stated he has not misbehaved since he has been transferred to McDuffie County Jail, where he can visit his family more regularly. Id. Additionally, Petitioner pointed out he already received punishment for his actions at the jail and increasing his sentence "goes beyond the bounds of fairness and sends a chilling message" to other defendants considering guilty pleas. Id.

8

The probation officer responded by citing Application Note 3 to U.S.S.G. § 3E1.1, which states evidence of acceptance of responsibility "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." Id. The probation officer argued Petitioner's conduct at Lincoln County Jail, which constituted violations of state and local law, significantly outweighed consideration of Petitioner's admissions as to the charged conduct. Id.

At sentencing, Petitioner also told Judge Hall he wanted to withdraw his guilty plea, stating Mr. Durham instructed him to say "yes" to everything at the change of plea hearing and he has a family and a daughter who need him. CR 113-010, doc. no. 404, pp. 5-7. During questioning by Judge Hall, Petitioner confirmed Mr. Durham did not threaten or pressure him into pleading guilty, he knew what he was doing during the change of plea hearing, and he knew about his family situation during the change of plea hearing. Id. Accordingly, Judge Hall found an insufficient basis for allowing Petitioner to withdraw his guilty plea and proceeded with sentencing. Id. at 7.

Judge Hall heard argument from Mr. Durham concerning the PSI objection. Id. at 3. Mr. Durham stated Petitioner admitted the conduct alleged in paragraphs fifteen, sixteen, seventeen, and nineteen, but believed he was in a private area while masturbating and misbehaved in order to be moved closer to his family in McDuffie County. Id. at 3-4, 8-11. Mr. Durham asked Judge Hall to grant Petitioner the acceptance of responsibility reduction because Petitioner believed he was entitled to it and Petitioner still faced a two-year consecutive sentence in addition to the sentencing guideline range for the other charges. Id. at 9, 12. The government argued Petitioner's admission shows he has not turned away from

criminal activity and committed criminal actions while incarcerated, citing in support the application notes to U.S.S.G. § 3E1.1 stating acceptance of responsibility can be outweighed by other inconsistent conduct. Id. at 13-15.

Judge Hall described Petitioner's admitted actions as set forth in the PSI in detail before determining Petitioner's actions were not consistent with a defendant who has truly accepted responsibility for his criminal conduct. Id. at 15-20. Accordingly, Judge Hall overruled Petitioner's objections and upheld the probation officer's recommendation Petitioner be denied an acceptance of responsibility reduction. Id. at 20.

Mr. Durham argued in mitigation Petitioner has a baby and wants to return home to be a proper parent to the child. Id. at 22. Petitioner declined to address Judge Hall further. Id. at 22-24. The government described Petitioner as unrepentant, unremorseful, and unwilling to abide by the rules of the Court, and asked Judge Hall to sentence Petitioner at the high end of the guideline range. Id. at 24. Judge Hall imposed a sentence of 84 months of imprisonment for Counts One, Ninety-three, and Ninety-six to be served consecutively to twenty-four months of imprisonment for Count 122 and the term of incarceration Petitioner was currently serving in McDuffie County Jail for state court convictions. Id. at 25.

**F.    Subsequent Proceedings**

On December 17, 2013, Petitioner filed a *pro se* notice of appeal. Id., doc. no. 351. The Eleventh Circuit Court of Appeals appointed Mr. Durham to represent Petitioner on appeal. Id., doc. no. 354. On July 8, 2014, Mr. Durham filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), on Petitioner's behalf, in which he stated there were no meritorious grounds for an appeal and raised the issue of whether Judge Hall properly overruled Petitioner's objection concerning acceptance of responsibility. (Doc. no. 21-1, pp.

20-25.)

On November 17, 2014, Petitioner filed a motion under 28 U.S.C. § 2255 while his direct appeal was still pending, arguing he did not receive an acceptance of responsibility reduction due to ineffective assistance of counsel and "prosecutorial misconduct by the sentencing district judge," which rendered Petitioner's plea agreement involuntary.  CR 113-010, doc. no. 440.  Judge Hall dismissed Petitioner's motion without prejudice because his direct appeal was still pending before the Eleventh Circuit.  Id., doc. nos. 443, 448.

On January 7, 2015, the Eleventh Circuit granted Mr. Durham's motion to withdraw, supported by his Anders brief, performed an independent review of the record, determined there were no arguable issues of merit, and affirmed Petitioner's conviction and sentence. Id., doc. no. 449.  On January 26, 2015, Petitioner filed a memorandum in support of his first motion, raising additional grounds for relief.  Id., doc. no. 452.  On September 25, 2017, Petitioner filed a motion for reconsideration or reinstatement of his previous § 2255 motion, to which the government responded.  Id., doc. nos. 568, 569.  On October 23, 2017, Petitioner filed a motion to have his motion for reconsideration be considered a supplement or addendum to his initial motion.  Id., doc. no. 570.  On November 6, 2017, the government responded to Petitioner's filing.  Id., doc. no. 571.

On April 9, 2018, the Judge Hall directed the Clerk of Court to docket Petitioner's first § 2255 motion and memorandum in support in the above-captioned civil case, effectively resetting Petitioner's case.  (Doc. no. 1.)  Subsequently, Petitioner filed motions to amend his petition, which the Court granted.  (Doc. nos. 5, 6, 7, 10.)  Petitioner then filed an amended § 2255 motion and second amended § 2255 motion.  (Doc. nos. 11, 13.)  Rather than further delaying progression of the case, the Court treated both amended motions as the

11

controlling pleadings and directed Respondent to respond. (Doc. no. 14, p. 2.) On September 6, 2018, Respondent filed its response to Petitioner's § 2255 motion. (Doc. no. 21.)

### G.   § 2255 Proceedings

Petitioner's § 2255 motions raise the following claims:

1)   The Court erred by denying a reduction of Petitioner's sentence for acceptance of responsibility.

2)   The government breached the plea agreement by failing to give Petitioner a three-point sentencing guideline reduction based on acceptance of responsibility.

3)   Petitioner's plea was rendered unknowing and involuntary because he was not informed the sentencing guideline reduction was premised on his behavior pending sentencing and he did not receive the sentencing guideline reduction.

4)   Counsel rendered pretrial ineffective assistance of counsel by:

   (a)   advising Petitioner to plead guilty when he knew Petitioner was innocent;
   (b)   allowing the prosecutor to mislead Petitioner about the plea agreement;
   (c)   failing to file a motion to withdraw Petitioner's guilty plea after the government breached the plea agreement; and
   (d)   negotiating the plea agreement, advising Petitioner to accept the plea offer, and telling Petitioner to just say "yes" at the change of plea hearing.

5)   Counsel rendered ineffective assistance of counsel on appeal by withdrawing from the case without informing Petitioner, withdrawing Petitioner's appeal as frivolous, and failing to challenge the government's breach of the plea agreement on appeal.[1]

(See generally doc. nos. 11, 13.)

---

[1]Petitioner's claims, as asserted in his first and second amended motions, are repetitive and disjointed. (See doc. nos. 11, 13.) Accordingly, the Court has reorganized Petitioner's claims in this manner.

## II.    DISCUSSION

### A.    No Evidentiary Hearing Required

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). For example, because the deficient performance prong of ineffective assistance is judged by "whether counsels' representation fell below an objective standard of reasonableness, not whether counsel could provide some explanation for their actions," an evidentiary hearing exploring strategic decisions is not automatically required. Thomas v. United States, 596 F. App'x 808, 810 (11th Cir. 2015). When the Court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance without an evidentiary hearing." Gordon v. United States,

518 F.3d 1291, 1302 (11th Cir. 2008).  Because Petitioner's claims lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

### B. Petitioner's Claim the Sentencing Court Erred by Denying a Sentencing Reduction Based on Acceptance of Responsibility is Meritless

Petitioner argues Judge Hall committed "misconduct" by denying an acceptance of responsibility reduction to Petitioner's sentencing guideline range, even though Petitioner pleaded guilty.  (Doc. no. 11, p. 4.)

Under U.S.S.G. § 3E1.1, a defendant may obtain a two-point reduction for acceptance of responsibility if he "clearly demonstrates acceptance of responsibility for his offense," and may obtain an additional one-point reduction if the government requests it.  However, the comments to § 3E1.1 explain (1) the sentencing judge is in a unique position to evaluate acceptance of responsibility, (2) a defendant who enters a guilty plea is not entitled to a reduction as a matter of right, and (3) the sentencing judge's determination is "entitled to great deference."  U.S.S.G. § 3E1.1 cmts. 3, 5; see also United States v. Gonzalez, 524 F. App'x 557, 561 (11th Cir. 2013).

Appropriate considerations by the sentencing judge include but are not limited to truthfully admitting offense conduct and "voluntary termination or withdrawal from criminal conduct or associations."  U.S.S.G. § 3E1.1 cmt. 1; see also United States v. Wright, 862 F.3d 1265, 1279 (11th Cir. 2017); United States v. Pace, 17 F.3d 341, 343 (11th Cir. 1994).  Indeed, although "a guilty plea is 'significant evidence of acceptance of responsibility,' [it] may be outweighed if the defendant acts in a manner that is inconsistent with acceptance of responsibility."  United States v. Cepero, 338 F. App'x 834, 835 (11th Cir. 2009).  "A wide

range of evidence may be considered in determining if the defendant recognizes the wrongfulness of his conduct, has remorse for the consequences, and is willing to turn away from that conduct in the future." United States v. Raimondi, 620 F. App'x 803, 805 (11th Cir. 2015) (citing United States v. Scroggins, 880 F.2d 1204, 1215-16 (11th Cir. 1989)). Thus, the sentencing judge may consider subsequent criminal conduct, even if unrelated to the offense of conviction, and the consideration is not limited to criminal behavior resulting in a conviction. Wright, 862 F.3d at 1279 (upholding denial of acceptance of responsibility reduction where defendant possessed marijuana on pretrial release for conspiracy to submit fraudulent tax returns charges); Pace, 17 F.3d at 343-44 (denying acceptance of responsibility based on positive drug test on day of sentencing, which violated bond term for pretrial release); United States v. Jordan, 190 F. App'x 894, 897 (11th Cir. 2006) (rejecting argument defendant was improperly denied acceptance of responsibility reduction based on unproven, pending state charges for robbery committed while on bond after pleading guilty but awaiting sentencing).

Petitioner admitted to the conduct alleged in paragraphs fifteen, sixteen, seventeen, and nineteen of the PSI, which included three instances of masturbation, threatening to throw urine on a prison official, twice telling a prison nurse "I have something for you to swallow" while gesturing with his hands inside his pants, and cursing at and acting aggressively toward prison officials. PSI ¶¶ 15, 16, 17, 19; PSI Addendum. Defense counsel's only arguments at sentencing were Petitioner believed he was in a private location while masturbating, acted as he did in order to be moved closer to his family, and Petitioner was apologetic for his actions. CR 113-010, doc. no. 404, pp. 3-4, 8-11, 16. Petitioner declined to personally address Judge Hall regarding his actions. Id. at 17.

Judge Hall stated Petitioner's admitted conduct was "not consistent with that of a defendant who has truly accepted responsibility for his criminal conduct," and described Petitioner's actions toward the nurse and threat to throw urine on a prison official as potentially criminal conduct.  Id. at 19-20.  Accordingly, Judge Hall concluded Petitioner "has not withdrawn from criminal conduct and has clearly acted while in jail in a manner that is inconsistent with the acceptance of responsibility" and upheld the denial of the acceptance or responsibility reduction.  Id. at 20.

Judge Hall properly considered Petitioner's subsequent conduct in determining Petitioner's actions while incarcerated in LCJ outweighed the acceptance of responsibility evidenced by Petitioner's guilty plea.  Wright, 862 F.3d at 1279; Cepero, 338 F. App'x at 835.  Thus, the Court cannot say Judge Hall erred when he denied Petitioner's acceptance of responsibility reduction.  Accordingly, Petitioner's Ground Two claim is without merit.

### C.    Petitioner's Claim the Government Breached the Plea Agreement by Denying Petitioner an Acceptance of Responsibility Reduction is Baseless

Petitioner argues the government breached the plea agreement by denying Petitioner a three-point reduction to his guideline range based on acceptance of responsibility.  (Doc. no. 11, p. 6; doc. no. 13, p. 2.)  Additionally, Petitioner argues nothing in the plea agreement indicated the acceptance of responsibility reduction depended on Petitioner's behavior pending sentencing.  (Doc. no. 13, pp. 5-6, 14-15, 17-18.)

"'The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty.'"  United States v. Harley, 545 F. App'x 922, 924 (11th Cir. 2013) (quoting United States v. Taylor, 77 F.3d 368, 370 (11th Cir. 1996)).  "To determine whether the government violated a plea agreement, we

look at 'whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty.'" Id. (quoting United States v. Nelson, 837 F.2d 1519, 1521-22 (11th Cir. 1988)).

Petitioner's plea agreement states in relevant part:

> The government will not object to a recommendation from the probation office that the defendant receive a **2** level reduction for acceptance of responsibility under the provisions of Chapter Three Part E <u>Acceptance of Responsibility</u> of the sentencing guidelines, based upon the defendant clearly demonstrating acceptance of his responsibility for his offense in accordance with Section 3E1.1 (a) of the Sentencing Guidelines.  If a defendant qualifies for a decrease under subsection (a), the government will make a motion for an additional **1**-point reduction for acceptance of responsibility, provided the defendant truthfully admits the conduct comprising the offense of conviction, has fully complied with the terms of pretrial release, if applicable, has not engaged in criminal conduct subsequent to arrest or initial appearance in this matter, and truthfully admits or does not falsely deny any additional relevant conduct for which the defendant is accountable under the United States Sentencing Guidelines.

CR 113-010, doc. no. 273, pp. 1-2 (emphasis in original).  Petitioner signed the plea agreement, indicating he entered the agreement freely and voluntarily, read and understood the agreement, and that it reflected the terms and conditions reached by his attorney on his behalf and with his permission.  Id. at 11, 14.

Despite Petitioner's argument to the contrary, the plea agreement put Petitioner on notice the acceptance of responsibility reduction depended on him not "engag[ing] in criminal conduct subsequent to arrest or initial appearance in the case."  Id. at 2.  Thus, Petitioner would have reasonably understood the plea agreement required him to refrain from future criminal conduct pending sentencing.  Harley, 545 F. App'x at 924.

Furthermore, the government did not breach the plea agreement because it did not act in a manner inconsistent with its provisions.  First, by its clear terms, the plea agreement

17

indicates the probation office, not the attorney for the government, would determine whether Petitioner qualified for the initial two-point reduction under § 3E1.1.  The government's only obligation as to the initial two-point reduction was to refrain from objecting to the probation office's recommendation Petitioner receive the reduction if Petitioner qualified.  CR 113-010, doc. no. 273, pp. 1-2.  When Petitioner engaged in criminal conduct following his change of plea hearing, the probation officer determined Petitioner should not receive the two-point reduction because he no longer qualified.  Because the probation officer did not recommend the reduction, the government's obligation to refrain from objecting was moot.

Second, the government was only required to move for the additional one-point reduction if Petitioner qualified for the initial two-point reduction.  Id. at 2.  Because Petitioner did not qualify for the initial two-point reduction, the government was not required to move for the additional one-point reduction and did not breach the agreement by not doing so.  In short, the government did not breach any portion of the plea agreement because it satisfied its material promises contained therein.  Harley, 545 F. App'x at 924.  Only Petitioner was responsible for the loss of an acceptance of responsibility reduction.

**D.   Petitioner is Not Entitled to Relief on His Ground Three and Four Claims Regarding the Validity of His Guilty Plea and Mr. Durham's Pre-Plea Representation**

**1.   Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective

standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies . . . .   If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).  Furthermore, "where the alleged error of counsel is a failure to investigate or discovery potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea."  Hill v. Lockhart, 474 U.S. 52, 60 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id. at 59; Stephens v. Sec'y, Fla. Dep't of Corr., 678

20

F.3d 1219, 1225 (11th Cir. 2012), *cert. denied*, 568 U.S. 966 (2012).  In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas."  Hill, 474 U.S. at 58.  Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea.  Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted).  Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial.  Hill, 474 U.S. at 56-59.

## 2.    Petitioner's Guilty Plea Was Knowing, Voluntary, and Binding

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as

an intelligent admission of guilt." Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea."  Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Hall informed Petitioner in clear terms of the charges to which he was pleading guilty, and Petitioner testified he understood the charges.  CR 113-010, doc. no. 413, pp. 6-10, 19-20.  Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.  Id. at 9-13.  Petitioner testified that other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement.  Id. at 14-15, 30-31.  As to the plea agreement, Judge Hall specifically noted the government only "agreed that they will not object to [Petitioner] receiving a reduction" based on acceptance of responsibility, "assuming that in fact [Petitioner] qualif[ied] for that acceptance reduction." Id. at 13.

22

Additionally, Judge Hall informed Petitioner of the possible penalties he faced upon conviction.  In particular, Judge Hall explained the maximum ten-year prison term for the conspiracy charge, the maximum ten-year prison term for each count of misuse of health identifiers, and the maximum, two-year consecutive term for aggravated identity theft.  Id. at 15.  Finally, Petitioner also testified he had enough time to discuss the case with Mr. Durham and was satisfied with the help he had received from him.  Id. at 10-11; see also id., doc. no. 273, p. 14.

Thus, Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Petitioner has not argued, let alone shown a reasonable probability that, but for any alleged error at the Rule 11 proceeding, he would not have entered his guilty plea.  See Dominguez Benitez, 542 U.S. at 83.

Petitioner argues his guilty plea was not knowing and voluntary because he was not informed the acceptance of responsibility reduction would depend on his behavior pending sentencing and he did not receive the acceptance of responsibility reduction.  (Doc. nos. 11, p. 4; 13, p. 5, 13, 17.)  As described in § II.C, supra, the plea agreement clearly explained this to Petitioner.  Id., doc. no. 273, pp. 1-2.  Petitioner signed the plea agreement stating he read the plea agreement and understood what it means.  Id. at 14.  Furthermore, at the plea hearing, Judge Hall informed Petitioner the acceptance of responsibility reduction depended on him qualifying for the reduction, and Petitioner testified he understood.  Id., doc. no. 413, pp. 13-14.  Thus, Petitioner's sworn affirmations and the record makes it clear Petitioner

understood the acceptance of responsibility reduction turned on his behavior pending sentencing.

Moreover, during the change of plea hearing, Judge Hall informed Petitioner of the maximum statutory penalties and that he could sentence Petitioner above the suggested guideline range.  Id. at 15-18.  Thus, Petitioner was aware of the possibility of receiving a sentence above what he expected the suggested guideline range to be, and he, nonetheless, decided to plead guilty.  Thus, Petitioner's argument his guilty plea was not knowing and voluntary fails.

Finally, the Court determines below Petitioner's ineffective assistance of counsel claims based on Mr. Durham's pretrial representation are meritless.   Accordingly, Petitioner's guilty plea was knowing and voluntary, and he is not entitled to relief as to Ground Three.

### 3.   Petitioner's Ground Four Claims Form No Basis for Relief

#### a.   Mr. Durham Did Not Render Ineffective Assistance of Counsel By Advising Petitioner to Plead Guilty

In Ground Four (a), Petitioner claims Mr. Durham rendered ineffective assistance of counsel by advising Petitioner to plead guilty when he knew Petitioner was innocent.  (Doc. no. 13, pp. 4-5, 13-14.)  Petitioner cannot validly claim he was innocent of the conduct to which he pleaded guilty, as such assertions are contradicted by Petitioner's sworn testimony at the change of plea hearing.   "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under

oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

At the change of plea hearing, Petitioner testified he committed the crimes to which he was pleading guilty, agreed with the testimony by Agent Garland regarding his involvement in the criminal activity, and stated he wanted to plead guilty because he was in fact guilty of committing the crimes. Id., doc. no. 413, pp. 20, 26, 30. Although Petitioner initially indicated he only withdrew money from legal funds, he then admitted he knew his conduct was illegal, knew the money was not being obtained legitimately, understood the returns were fraudulent, and knowingly misused another person's identification for his own personal gain. Id. at 26-29. Furthermore, Petitioner repeatedly stated he "took full responsibility" for his actions. Id. Moreover, Petitioner signed the plea agreement setting forth the factual basis for his guilt and swore under penalty of perjury the facts recounted therein were true. Id., doc. no. 273, pp. 5-9, 14.

Thus, Petitioner's conclusory and belated claim he was innocent of the crimes to which he pleaded guilty, and Mr. Durham was ineffective for telling Petitioner to plead guilty despite his innocence, are insufficient to carry the burden of establishing his admissions at the change of plea hearing were false. Rogers, 848 F.2d at 168   Although Petitioner attempted to withdraw his guilty plea at sentencing and claimed Mr. Durham told him to answer Judge Hall's questions affirmatively, Petitioner did not contend then he was innocent of the crimes, only that his family and daughter needed him. CV 113-010, doc. no. 404, pp. 5-8. Petitioner's subsequent, self-serving statements he was innocent of the crimes

to which he pleaded guilty are contradicted by his own sworn testimony at his plea hearing and representations in the plea agreement, and Petitioner does not attempt to explain the discrepancy or why his sworn representations at the plea hearing should be disregarded. Accordingly, Petitioner's ineffective assistance claim in Count Four (a) fails.

> **b.      Mr. Durham Did Not Render Ineffective Assistance of Counsel by Allegedly Allowing the Government to Mislead Petitioner About the Plea Agreement**

In Ground Four (b), Petitioner argues Mr. Durham rendered ineffective assistance by allowing the prosecutor to mislead Petitioner about the plea agreement.  (Doc. no. 13, pp. 4-5, 13-14.)   Specifically, Petitioner states the government promised Petitioner he would receive three years of incarceration and one to three years of supervised release and did not inform Petitioner the plea agreement was premised on him not misbehaving pending sentencing.  (Id.)

First, Petitioner's contention the government promised him a three-year sentence is wholly unsupported by the record.  The plea agreement contains no stipulated sentence range or promise the government would recommend any given sentence.  See CR 113-010, doc. no. 273.  The plea agreement states Petitioner understood the Court would be free to impose any sentence authorized by law up to the statutory maximum sentence.  Id. at 3, 8.  Furthermore, Petitioner represented the plea agreement contained the entire agreement between himself and the government and swore he understood the plea agreement and it accurately set forth the terms and conditions of the plea.  Id. at 12, 14.

Additionally, at the change of plea hearing, Petitioner testified he reviewed the plea agreement, discussed it with his lawyer, and had not been promised anything other than what was in the plea agreement to convince him to plead guilty.  Id., doc. no. 413, pp. 13-15.

After Judge Hall explained the sentencing process, Petitioner reaffirmed he understood and he received no promise, prediction, or prophecy he would receive a specific sentence.  Id. at 16-19.  Thus, Petitioner's contention the government promised him a three-year sentence is affirmatively contradicted by the record and his own sworn statements.

Second, Petitioner claims the government misled him by failing to inform him the agreement was premised on his behavior pending sentencing and Mr. Dunham was ineffective for allowing it to do so.  As described in § II.C, *supra*, the plea agreement states the acceptance of responsibility reduction contemplated in the plea agreement would be based on Petitioner "clearly demonstrating acceptance of his responsibility for his offense," and "not engag[ing] in criminal conduct subsequent to arrest or initial appearance in this matter . . . ."  Id., doc. no. 273, pp. 1-2.  Petitioner signed the plea agreement stating he read and understood the plea agreement.  Id. at 14.  Furthermore, at the plea hearing, Judge Hall informed Petitioner the acceptance of responsibility reduction depended on him qualifying for the reduction, and Petitioner testified he understood.  Id., doc. no. 413, pp. 13-14.  Thus, Petitioner's affirmations and the record make it clear Petitioner understood the acceptance of responsibility reduction turned on his behavior pending sentencing.  Petitioner's failure to satisfy his obligations, resulting in his loss of the acceptance of responsibility reduction, is not attributable to the government.

Accordingly, because Petitioner's conclusory, self-serving statements the government mislead Petitioner as to either the sentence he would receive or his eligibility for an acceptance of responsibility reduction are affirmatively contradicted by the record, Petitioner's ineffective assistance claim based on Mr. Durham's alleged failure to prevent such deception fails.

27

> **c.     Mr. Durham Did Not Render Ineffective Assistance of Counsel by Failing to File a Motion to Withdraw Petitioner's Guilty Plea**

In Ground Four (c), Petitioner argues Mr. Durham was ineffective for failing to file a motion to withdraw Petitioner's guilty plea after the government breached the plea agreement.  (Doc. no. 11, p. 5; doc. no. 13, pp. 4, 13, 17.)  Petitioner is not entitled to relief on this claim.  Because the government did not breach the plea agreement as discussed in § II.C., *supra*, Petitioner could not have been prejudiced by Mr. Durham deciding not to make a meritless objection.   United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (rejecting ineffective assistance argument because "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").

Furthermore, Petitioner asked Judge Hall to allow him to withdraw his guilty plea at sentencing because of the needs of his family.  CR 113-010, doc. no. 404, pp. 5-7.  Judge Hall denied Petitioner's request, finding Petitioner had not asserted adequate grounds for withdrawing his guilty plea.  Id. at 7.   Other than Petitioner's conclusory and baseless contention the government breached the plea agreement, Petitioner does not identify any argument Mr. Durham could have made prior to sentencing that would have resulted in Judge Hall allowing Petitioner to withdraw his guilty plea.   Thus, Petitioner has not established prejudice based on Mr. Durham not filing a motion to withdraw Petitioner's plea agreement, and Petitioner is not entitled to relief on this claim.

> **d.     Petitioner is Not Entitled to Relief On His Ground Four (d) Claims of Ineffective Assistance of Counsel**

In Ground Four (d), Petitioner alleges Mr. Durham was ineffective by "negotiat[ing] the wrong plea" in his case, advising Petitioner to say "yes" to everything Judge Hall said at

the change of plea hearing, and advising Petitioner to accept the plea offer.  (Doc. no. 13, pp. 8, 15, 16.)

First, Petitioner's conclusory argument Mr. Durham "negotiated the wrong plea" does not warrant relief.  Petitioner does not allege any facts associated with the plea negotiation process or why he would have received a more favorable deal but for Mr. Durham's alleged ineffective assistance.  A bald assertion that some sort of other, more favorable plea deal might have been possible fails to establish the requisite prejudice.  Cummings v. United States, No. CV 112-224, 2013 WL 2422889, at *8 (S.D. Ga. June 3, 2013) (collecting cases for proposition conclusory, after-the-fact assertion concerning possibility of more favorable plea deal insufficient to show prejudice).  Furthermore, Petitioner's conclusory contention is rebutted by Petitioner's prior sworn statements indicating he authorized Mr. Durham to enter into plea negotiations with the government and the entire agreement is contained in the plea agreement.  CR 113-010, doc. no. 273, pp. 11-12, 14; doc. no. 413, pp. 13-15.  Thus, as Petitioner cannot show prejudice, his claim fails.

Second, Petitioner is not entitled to relief based on his claim Mr. Durham was ineffective for recommending Petitioner accept the plea offer.  Petitioner claims Mr. Durham stated the government was offering a three-year sentence and the agreement would avoid an investigation into Petitioner's family members, but Mr. Durham's advice was ultimately incorrect.  Again, Petitioner's contentions are undermined by his previous sworn statements to the contrary.  As described above, Petitioner's plea agreement contained no stipulated sentence range or promise the government would recommend any given sentence, and Petitioner affirmed the plea agreement contained the entire agreement between himself and the government.  See CR 113-010, doc. no. 273.  At the change of plea hearing, Petitioner

testified he had not been promised anything other than what was in the plea agreement to convince him to plead guilty and received no promise, prediction, or prophecy he would receive a specific sentence.  Id., doc. no. 413, pp. 13-19.  Petitioner's claim is factually unsupported in the record and, thus, wholly incredible.  Tejada, 941 F.2d at 1559.

Furthermore, even if Mr. Durham had advised Petitioner he would receive a three-year sentence if he accepted the plea offer, Petitioner would not be able to establish prejudice.  Both the plea agreement and Judge Hall informed Petitioner of the nature of the promises contained in the plea agreement, and Petitioner swore at the change of plea hearing he understood the terms of the plea agreement.  Id., doc. no. 273, p. 11-12, 14; doc. no. 413, pp. 13-15.    Thus, Petitioner could not show he was prejudiced by Mr. Durham's allegedly ineffective advice.  See United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (per curiam) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court explaining "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea").

Finally, Petitioner is not entitled to relief based on his claim Mr. Durham told him to say "yes" to everything Judge Hall said during the change of plea hearing.  (Doc. no. 13, pp. 8, 15.)  Petitioner does not allege Mr. Durham threatened or coerced Petitioner into giving any answer at the change of plea hearing.  Indeed, Judge Hall asked Petitioner if Mr. Durham threatened or pressured him to plead guilty, and Petitioner confirmed he did not.  CR 113-010, doc. no. 404, p. 6.  Petitioner cannot now disclaim the answers he gave Judge Hall under oath by merely alleging Mr. Durham told him to commit perjury.

Moreover, Petitioner has not established prejudice.  Although Petitioner contended at sentencing his plea was involuntary based on Mr. Durham's advice, he affirmed to Judge Hall he was not threatened or pressured to plead guilty, knew where he was and what he was doing, and nothing had changed as to his guilt and the factual basis underlying his plea.  Id. at 5-7.  Petitioner even conceded he was aware of the fact his family needed him—the only basis he gave for requesting to withdraw his plea—at the time of the change of plea hearing. Id. at 7.  Thus, even if Mr. Durham gave Petitioner deficient advice by telling him to say yes to Judge Hall's questions, Petitioner's subsequent sworn testimony indicates none of the answers he gave during the change of plea hearing were false.  Thus, Petitioner can show neither deficient performance nor prejudice as to this claim.

In short, based on the reasons above, Petitioner is not entitled to relief based on any of the claims raised in Ground Four (d).

### E.  Petitioner Is Not Entitled to Relief on Any of the Ineffective Assistance Claims Related to His Direct Appeal in Ground Five

Petitioner also asserts Mr. Durham provided ineffective assistance on direct appeal by withdrawing from the case without informing Petitioner, withdrawing Petitioner's appeal as frivolous, and failing to challenge the government's breach of the plea agreement on appeal. Petitioner is not entitled to relief on these grounds.

On December 17, 2013, Petitioner filed a *pro se* notice of appeal.  Id., doc. no. 351. The Eleventh Circuit Court of Appeals appointed Mr. Durham to represent Petitioner on appeal.  Id., doc. no. 354.  On July 7, 2014, Mr. Durham wrote Petitioner to inform him about the motion to withdraw as counsel and Anders brief being submitted to the Eleventh Circuit.  (Doc. no. 2, p. 29.)  On July 8, 2014, Mr. Durham filed the Anders brief on

Petitioner's behalf, in which he raised the issue of whether Judge Hall properly overruled Petitioner's objection as to the acceptance of responsibility reduction.  (Doc. no. 21-1, pp. 20-25.)  On July 24, 2014, the Eleventh Circuit informed Petitioner Mr. Durham filed the motion to withdraw as counsel and Anders brief, and gave Petitioner thirty days to respond. (Doc. no. 21-2, p. 4.)  On August 7, 2017, the Eleventh Circuit acknowledged Petitioner's updated address and gave Petitioner an additional thirty days to respond.  (Id. at 2.)  On January 7, 2015, the Eleventh Circuit granted Mr. Durham's motion to withdraw, supported by his Anders brief, performed an independent review of the record, determined there were no arguable issues of merit, and affirmed Petitioner's convictions and sentences.  Id., doc. no. 449.

Petitioner's Ground Five claims centrally concern Mr. Durham's Anders brief and motion to withdraw as counsel on appeal.  However, to demonstrate counsel was ineffective by filing an Anders brief, Petitioner must show appellate counsel was deficient in failing to comply with Anders.  Tapanes v. United States, Nos. 2:10-cv-13-FTM-29SPC, 2:07-cr-43-FTM-29SPC, 2012 WL 2944859, at *8 (M.D. Fla. July 18, 2012) (citing Grubbs v. Singletary, 120 F.3d 1174, 1177 (11th Cir. 1997)).  Pursuant to Anders, if counsel determines an appeal would be frivolous, "he should so advise the court and request permission to withdraw.  That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal."  Id. (quoting Anders, 386 U.S. at 744).

Here, Mr. Durham complied with the Anders requirements by filing a motion to withdraw as counsel and a brief, in which he raised the only issue he believed might arguably support the appeal; i.e., whether Judge Hall properly overruled Petitioner's objection as to the acceptance of responsibility reduction.  (See doc. no. 21-1.)  Thus, as a general matter,

Mr. Durham did not render ineffective assistance of counsel as he complied with all requirements once he determined the appeal would be frivolous.

Nevertheless, Petitioner also raises three ancillary claims concerning Mr. Durham's representation on appeal.  First, Petitioner argues Mr. Durham rendered ineffective assistance of counsel on appeal by failing to inform Petitioner he intended to withdraw from the case. (Doc. no. 13, pp. 8, 15.)    Petitioner's claim is factually baseless.  Mr. Durham wrote Petitioner on July 7, 2014, to inform him of the motion to withdraw as counsel and served copies of the motion and Anders brief on Petitioner.  (Doc. no. 2, p. 29.)  Furthermore, even if Mr. Durham had not written or mailed the letter, Petitioner could not show prejudice because the Eleventh Circuit notified Petitioner of Mr. Durham's motion to withdraw and Anders brief at two addresses and gave Petitioner thirty days to respond to the motion and present any arguments on his behalf showing the appeal had merit.  (See doc. no. 21-2.) Thus, Petitioner is not entitled to relief on this claim.

Second, Petitioner argues Mr. Durham was ineffective for withdrawing Petitioner's appeal as frivolous.  Again, Petitioner's contention displays a confused understanding of the facts.   Mr. Durham did not withdraw Petitioner's appeal; he merely filed a motion to withdraw as counsel and filed an Anders brief stating he could not in good faith bring any issue on appeal warranting reversal of Petitioner's conviction.  See Belitsky v. United States, Nos. 2:15-cv298-FTM-29CM, 2:09-CR-14-FTM-29UAM, 2018 WL 2317796, at *9, n.4 (M.D. Fla. May 22, 2018) (distinguishing voluntary dismissal from Anders brief).  Because Petitioner's argument lacks a factual basis, there is no basis for relief.

Finally, Petitioner argues Mr. Durham was ineffective on appeal for failing to challenge the government's breach of the plea agreement.  As discussed in § II.C., *supra*, the

government did not breach the plea agreement.   Thus, Petitioner could not have been prejudiced by Mr. Durham deciding not to make a meritless objection.   Winfield, 960 F.2d at 974.   Accordingly, Petitioner is not entitled to relief on his Ground Five claims.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 13th day of February, 2019, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA